UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

UNITED STATES OF AMERICA,                CASE NO.:   00-930-CR-HUCK
    Plaintiff,

v.

ROBERT RACHLIN,

    Defendant.
_____/

## DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT AND MOTIONS FOR DOWNWARD DEPARTURE

Defendant, ROBERT RACHLIN, through counsel, hereby files his objections to the presentence report and motion for downward departure at sentencing and states as follows:

### OBJECTIONS TO PRESENTENCE REPORT

Defendant adopts the objections to the presentence report which were filed by the Government with regard to the loss amount and the criminal history calculation. However, Defendant submits that Defendant should not be assessed one criminal history point under § 4A1.2(4) as argued by the Government. That section applies where a defendant appears before the court for sentencing but is awaiting sentencing in another matter. This is not the case. Only one criminal history point should be assessed Defendant.

Further, Defendant submits that he is entitled to a three point acceptance of responsibility reduction. Defendant has provided an acceptance of responsibility statement to probation.

## MOTION FOR DOWNWARD DEPARTURE

Defendant moves this Honorable Court for a downward departure from the guideline range established at sentencing pursuant to section 5K2.0 of the sentencing guidelines and as grounds therefor states as follows:

A. MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. § 5K2.0 BASED UPON COMBINATION OF FACTORS

In <u>United States v. Rivera</u>, 994 F.2d 942 (1st Cir. 1993), then Chief Judge Breyer, one of the original members of the Sentencing Commission, clarified the concept of departures under the sentencing guidelines. Judge Breyer noted that cases that are unusual or outside the heartland of the guidelines are good candidates for departure, as well as cases in which the commission has specifically encouraged departures in Chapter 5 of the guidelines:

> The introduction to the guidelines (which the commission calls a "policy Statement") makes an important distinction between a "heartland case" and an "unusual case." The Introduction says that the commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. Ch. I, Pt. A, intro. Comment. (4)(b). The Introduction goes on to say that when a court finds an atypical case, one to which a particular guideline linguistically applies, but where conduct significantly differs from the norm, the court may consider whether a departure is warranted. The Introduction further adds that, with a few stated exceptions, the commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.

> The introduction thus makes clear that (with a few exceptions) a case that falls outside the linguistically applicable guideline's "heartland" is a candidate for departure. It is, by definition, an "unusual case." And, the sentencing court may then go on to consider, in light of the sentencing system's purpose, see 18 U.S.C. 3553(a), (and the guidelines themselves) whether or not the "unusual" features of the case justify departure.

994 F.2d at 949.

In Koon vs. United States, 518 U.S. 81 (1996), the Supreme Court approved the Rivera analysis and upheld departures granted by the trial court, noting:

> The goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities and so reach towards the evenhandedness and neutrality that are the distinguishing marks of any principled system of justice. In this respect, the Guidelines provide uniformity, predictability, and a degree of detachment lacking in our earlier system. This too must be remembered, however. It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States District Judge.

518 U.S. at 113.

As the District Court stated in United States v. Baron, 914 F.Supp 660, 665 (D. Mass; 1995):

> The best policy considerations can be unnecessarily cruel when applied rigidly and without exception to individual human beings . . .. Some [offenders] would be destroyed by a term in prison. There are defendants for whom prison incarceration makes no sense.

(citations omitted).

Defendant submits that should the Court find that any one factor does not, on it's own, warrant a departure, the total aggregate of the factors justifies a downward departure. In fact, the Commentary to section 5K2.0 suggests just that. Moreover, this approach has been applied in other cases. See United States v. Rioux, 97 F.3d 648, 663 (2d. Cir. 1996) and United States v. Paradies, 14 F.Supp. 2d 1315, 1320 (ND. Ga. 1998).

A lengthy analysis of the availability of a downward departure based upon a combination of factors was done in United States v. Jones, 158 F.3d 492 (10th Cir. 1998). There the court stated:

> The Sentencing Commission explicitly left open "the possibility

of an extraordinary case that, because of a combination of such characteristics or circumstances [not ordinarily relevant to a departure], differs significantly from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing." U.S.S.G. § 5K2.0, comment. While recognizing that such [**39] an atypical case might warrant a departure, the Government summarily asserts that "no combination of the wholly inadequate factors in this case could remove defendant's case from the heartland and justify a departure."

The record before us leaves no doubt the sentencing court found this case sufficiently atypical to warrant departure, without recourse to the two impermissible factors. First, the district court made a global assessment that "all of these factors," not in combination, but individually, "are present to an exceptional degree." Second, the court's discussion of the various individual grounds for departure indicates the permissible factors were present to an exceptional degree. By way of illustration, the court referred to Mr. Jones' "highly unusual" disclosure of the facts underlying his offense conduct; his "significant post-arrest improvement" and "scrupulous[]" adherence to the conditions of release; his "significant improvement" in understanding and attitude; and his "very special position to receive the most effective counseling for rehabilitation" at his job site, making it "the very best place" for Mr. Jones to be counseled. Third, the court characterized Mr. Jones' entire criminal episode as an "aberration," again pointing up the unusualness of the case.

Finally, the record indicates the district considered its decision to depart in light of the statutory purposes of sentencing. See 18 U.S.C. § 3553(a)(2). Those purposes include both the need to provide the defendant with the most effective correctional treatment and the need to protect the public. *Id.* We have already discussed the district court's careful consideration of where Mr. Jones would receive superior rehabilitation counseling. However, prior to granting Mr. Jones' motion for a downward departure, the district court also satisfied itself that Mr. Jones had observed the conditions of his release and that Ms. Begay, his former spouse, would enjoy peace of mind if Mr. Jones was placed on probation.

In view of the district court's special competence in making the refined comparative factual assessments necessary to determine if a circumstance is unusual or a characteristic is present to an exceptional degree, see Koon, 518 U.S. at 98-99, we are not inclined to substitute our judgment for that of the sentencing court. The district court did not abuse its

> discretion when it found the circumstances of this case atypical. The permissible departure factors available to the district court, in the aggregate, provided a proper basis for departure, and are supported adequately in the record.

Jones, 158 F.3d at 504-05.

In United States v. Rybicki, 96 F.3d 754 (4th Cir. 1996), the court discussed standards which should be used in departing downward in unusual cases based on a combination of factors:

> Even in exercising their discretion to depart in atypical cases, however, sentencing courts are not left "adrift." Koon, 116 S. Ct. at 2045. To retain a degree of uniformity in sentencing, courts' departure decisions must remain guided by the Sentencing Guidelines. Consistently with Koon, therefore, we prescribe the following analysis for sentencing courts to follow when deciding whether to depart, and we clarify the standards for review of departure decisions:
>
> 1. The district court must first determine the circumstances and consequences of the offense of conviction. This is a factual inquiry which is reviewed only for clear error.
> 2. The district court must then decide whether any of the circumstances or consequences of the offense of conviction appear "atypical," such that they potentially take the case out of the applicable guideline's heartland. This determination will necessarily be informed by the district court's experience in criminal sentencing. Unlike the other steps in this analysis, a district court's identification of factors for potential consideration is purely analytical and, therefore, is never subject to appellate review.
> 3. Having identified factors that may potentially remove a case from the applicable guideline's heartland, the district court must identify each according to the Guidelines' classifications as a "forbidden," "encouraged," "discouraged," or "unmentioned" basis [**5] for departure. Because a court's classification of potential bases for departure is a matter of guideline interpretation, we review such rulings de novo in the context of our ultimate review for abuse of discretion. See Koon, 116 S. Ct. at 2047 ("whether a factor is a permissible basis for departure under any circumstances is a question of law" (emphasis added)). And "[a] district court by definition abuses its discretion when it makes an error of law." Id. A factor

classified as "forbidden," see, e.g., U.S.S.G. § 5H1.10 (race, sex, national origin, creed, religion, socio-economic status); U.S.S.G. § 5H1.12 (lack of guidance during youth); U.S.S.G. § 5H1.4 (drug or alcohol dependence); U.S.S.G. § 5K2.12 (economic hardship), can never provide a basis for departure and its consideration ends at this step. See Koon, 116 S. Ct. at 2044.

4. Factors that are "encouraged," "discouraged," or "unmentioned" require further analysis. "Encouraged" factors, see, e.g., U.S.S.G. § 5K2.10 (victim provocation [*758] as a downward departure factor); U.S.S.G. § 5K2.7 (disruption of governmental function as an upward departure factor), are usually appropriate [**6] bases for departure. But such factors may not be relied upon if already adequately taken into account by the applicable guideline, and that legal analysis involves interpreting the applicable guideline, which we review de novo to determine whether the district court abused its discretion. Koon, 116 S. Ct. at 2045, 2047. Conversely, "discouraged" factors, see, e.g., U.S.S.G. § 5H1.6 (family ties and responsibilities); U.S.S.G. § 5H1.2 (education and vocational skills); U.S.S.G. § 5H1.11 (military, civic, charitable, or public service), are "'not ordinarily relevant,'" but may be relied upon as bases for departure "'in exceptional cases,'" e.g., where "the factor is present to an exceptional degree or in some other way [that] makes the case different from the ordinary case where the factor is present." Koon, 116 S. Ct. at 2045 (quoting U.S.S.G. ch. 5, pt. H, intro. comment.). When the determination of whether a factor is present to an exceptional degree amounts merely to an evaluation of a showing's adequacy, it becomes a legal question, and our review is de novo to determine whether the district court abused its discretion. Finally, although the Sentencing [**7] Commission expects departures based on "unmentioned" factors to be "'highly infrequent,'" Koon, 116 S. Ct. at 2045 (quoting U.S.S.G. ch. 1, pt. A, comment 4(b)), such factors may justify a departure where the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole" indicate that they take a case out of the applicable guideline's heartland. Id. (citation omitted). The interpretation of whether the Guidelines' structure and theory allow for a departure is, again, a legal question subject to de novo review to determine whether the district court abused its discretion.

5. As the last step, the district court must consider whether circumstances and consequences appropriately classified and considered take the case out of the applicable guideline's heartland and whether a departure from the guideline's

> specified sentencing range is therefore warranted. Because this step requires the sentencing court to "make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing" and its comparison of the case with other Guidelines cases, this part of the departure analysis "embodies the traditional exercise of discretion by [the] sentencing court." Id. at 2046-47. While we review this ultimate departure decision for abuse of discretion, id. at 2047-48, if the district court bases its departure decision on a factual determination our review of that underlying determination is for clear error. And if the court's departure is based on a misinterpretation of the Guidelines, our review of that underlying ruling is de novo. See id. at 2046-48.

Rybicki, 96 F.3d at 757-58.

Defendant has been active in his community for a number of years. He has been support of the school PTA and in the Howard Palmetto Khoury Baseball League. In fact a number of letters have been presented to the Court attesting to Defendant's untiring efforts for the benefit of those in his community. As such, the Court should consider this in determining whether a downward departure is appropriate. See United States v. Rioux, supra and United States v. Jones, supra.

The court should also consider that the Defendant has held long term employment as an accountant in the Miami-Dade community. Again, the letters provided to the Court speak to his work and his compassion for his clients. The court may also consider this information. See United States v. Tsosie, 14 F.3d 1438, 1441-42 (10th Cir. 1994)

This court should also consider the circumstances of the offense in considering the requested departure. AS the presentence report shows, the Defendant was approached by two postal workers who had stolen money and were looking for an accountant to help conceal their illegal activity. In United States v. Artunoff, 1 F.3d 1112, 1120 (10th Cir. 1993), the court considered for departure the fact that the defendant was not the sole

cause of the loss. Another circumstance the court should consider is that Defendant freely gave the Government the information which was used to prosecute him. In addition to the opinion in Jones, supra, which approved of this factor in determining whether a departure was appropriate, the court can also look to the language of section 5K2.16 regarding voluntary disclosure of the offense as a basis for departure. Further, the court should consider the Defendant's clear remorse for his involvement in the offense as a ground for downward departure. See United States v. Fagan, 162 F.3d 1280 (10th Cir. 1998).

Lastly, this court should consider that Defendant is responsible for a large number of investments made by innocent third parties which investments would be at risk should Defendant be unavailable to administer them. Where the imprisonment of an individual defendant will have an extraordinary impact on third parties who rely upon a business operated by a defendant, the devastation suffered by these innocents can properly be taken into account as a grounds for departure from the sentence suggested by the Guidelines. E.g., United States v. Olbres, 99 F. 3d 28, 36 (1st Cir. 1996); United States v. Milikowski, 65 F. 3d 4, 8 (2d Cir. 1995).[1] While business ownership alone does not make downward departure appropriate, where, as here, "imprisonment would impose extraordinary hardship on [innocent third party investors]," this factor must be considered by the sentencing court. Milikowski, 65 F. 3d at 8.

---

[1] The Eleventh Circuit reached a similar conclusion -- that, in the appropriate extraordinary case, loss of a business could be a ground for departure -- in United States v. Mogel, 965 F. 2d 1555, 1564 (11th Cir. 1992). The Mogel Court concluded that the facts presented by the defendant Mogel, which were limited to the bare fact that the defendant's business would fail, did not rise to the level of extraordinary. The Mogel court did not consider -- and apparently Defendant Mogel did not raise -- the issue of the impact of imprisonment of the defendant on the innocent parties who rely upon the defendant's business.

Defendant submits that the totality of the circumstances in this case warrant a downward departure from the sentencing guideline range established at sentencing..

WHEREFORE, the Defendant respectfully requests that this Honorable Court grant the relief requested herein.

Respectfully submitted,

ENTIN, MARGULES & DELLA FERA, P.A.
200 East Broward Boulevard
Suite 1210
Fort Lauderdale, Florida 33301
Telephone: (954) 761-7201
Facsimile: (954) 767-8343

By: _____
ALVIN ENTIN
Fla. Bar No. 127027

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy of the foregoing was sent via U.S. Mail to Thomas Mulvehill, Assistant United States Attorney, 99 Northeast 4th Street, Miami, Florida 33132-2111 and Sandy Garcia, United States Probation Officer, 300 NE 1st Avenue, Room 315, Miami, Florida 33132-2126.